**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

---

RAVE SALON, INC. d/b/a JOOSIE
VAPES,

               Plaintiff,

       v.

FOOD AND DRUG ADMINISTRATION,
*et al.*,

               Defendants.

Civil Action No. 3:18-cv-00237-G

---

**REPLY IN SUPPORT OF
<u>DEFENDANTS' MOTION TO TRANSFER</u>**

Defendants have moved to transfer this case to the U.S. District Court for the District of Columbia, where it (along with an identical action currently pending in the District of Minnesota) can be consolidated with a third identical case pending in the District of Columbia. Simultaneously litigating the same claims in three separate cases in three different districts would lead to the unnecessary expenditure of party and judicial resources and could result in inconsistent judgments. A transfer, on the other hand, would allow for the more efficient, economical, and convenient resolution of Plaintiff's claims—for all involved. Plaintiff's opposition does nothing to undermine this common-sense conclusion. Accordingly, the Court should transfer this case pursuant to 28 U.S.C. § 1404(a).

**I.      Plaintiff's Forum Choice Is Not Dispositive**

Plaintiff suggests that the transfer analysis should begin and end with Plaintiff's choice of forum. *See* Opp'n to Defs.' Mot. to Transfer Venue ("Pl.'s Opp'n") at 3-4, ECF No. 25. But the Fifth Circuit has squarely rejected that approach. In *In re Volkswagen of America, Inc.*

("*Volkswagen II*"), 545 F.3d 304 (5th Cir. 2008), the court granted a writ of mandamus directing the district court to transfer a case after concluding that the district court, in denying a transfer, had "giv[en] inordinate weight to the plaintiffs' choice of venue" by requiring the defendant to show that the § 1404(a) factors "substantially outweigh[ed] the plaintiffs' choice of venue." *Id*. at 314-15.  In doing so, the court made clear that a plaintiff's choice of forum is "not an independent factor" to be considered in the transfer analysis, much less a dispositive factor.  *Id*. at 314 n.10. Moreover, the court held that a party seeking a transfer of venue under § 1404(a) need only show "good cause" for the transfer—meaning the moving party must "clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id*. at 315.  Defendants have made that showing here for the reasons explained in their opening brief and below.

Plaintiff's argument that the general venue statute permits challenges to agency action to be brought in the district where a plaintiff resides is a straw man.  *See* Pl.'s Opp'n at 4.  Defendants do not dispute that the Northern District of Texas is a proper venue for this action, just as Plaintiff does not dispute that the District of Columbia also would be a proper venue.  *See id*. at 2-3.  The question under § 1404(a), however, is whether the District of Columbia is a more appropriate forum under the convenience and interest of justice factors.  If Plaintiff's action here were the only one of its kind, those factors might weigh differently.  But where, as here, the same attorneys file three identical cases on behalf of different plaintiffs on the same day, raising the same claims in nearly verbatim fashion against the same Defendants and seeking the same relief, it is undoubtedly in the interest of justice and more convenient for the parties and the courts to resolve all three cases in a single forum.  Moreover, as Defendants showed in their opening brief, of the three districts in which the cases are pending, the U.S. District Court for the District of Columbia is the most convenient forum under the applicable factors.

II.     **A Transfer Will Promote Judicial Economy**

Transferring this case to the District of Columbia, so that it (along with the District of Minnesota action) can be consolidated with the identical action pending there, will conserve judicial resources.  "Only one judge [will] need [to] be 'educated' with regard to the [issues]" and only one judge will have to spend the time and resources necessary to manage the proceedings and decide the cases.  *Medtronic, Inc. v. Am. Optical Corp.*, 337 F. Supp. 490, 497 (D. Minn. 1971); *see, e.g.*, *Front Row Techs., LLC v. MLB Advanced Media, L.P.*, No. 3:12-CV-1639-K, 2012 WL 12044383, at *5 (N.D. Tex. Dec. 17, 2012).  Plaintiff's preferred approach, on the other hand, would result in the waste of judicial time and resources, as three separate courts simultaneously "review the same agency [rule]," evaluate "the same complex and voluminous agency record," and "decide identical issues of . . . law."  *Celanese Corp. v. Fed. Energy Admin.*, 410 F. Supp. 571, 575 (D.D.C. 1976); *see Front Row Techs.*, 2012 WL 12044383, at *5 (recognizing "the efficiencies that would flow from having one court decide" related cases and "the administrative difficulties and inefficiencies that could occur if the cases remain pending in separate courts").

Plaintiff argues that resolving the three cases separately will not result in too much waste because, in Plaintiff's view, its claims "turn[] principally on legal questions" and "the administrative record is unlikely to aid th[e] Court in its deliberations."  Pl.'s Opp'n at 8; *see also id*. at 5-6.  Notwithstanding Plaintiff's view of the case, Defendants intend to submit and rely on the administrative record—which spans more than 230,000 pages—to defend against Plaintiff's claims.  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (explaining that, under the Administrative Procedure Act ("APA"), the "focal point for judicial review should be the administrative record").  For example, Defendants likely will argue, among other things, that the premarket review requirement for "modified risk" tobacco products promotes a substantial

government interest and is appropriately tailored to that interest.  *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563-64 (1980).  And, in doing so, Defendants will rely on information in the administrative record.  Defendants also will rely on material in the administrative record to show that the deeming rule complies with the Appointments Clause.  To resolve Plaintiff's claims, therefore, the Court will need to delve into the voluminous administrative record.  And requiring three courts—instead of only one—to do so is wasteful of judicial time and resources.[1]

Even if this were not an APA case (and no one disputes that it is), judicial resources still would be wasted if three courts simultaneously addressed the same legal questions.  As one court aptly observed, "[a]bsent transfer, three judges and their staffs will devote dozens if not hundreds of hours to properly frame the issues, review substantial briefing and arguments . . . , and carefully craft opinions addressing complex subject matter."  *Huffman v. EPA*, Civ. A. No. 2:10-01189, 2011 WL 322661, at *6 (S.D.W. Va. Jan. 31, 2011); *see also, e.g.*, *Defenders of Wildlife v. Jewel*, 74 F. Supp. 3d 77, 88 (D.D.C. 2014) (concluding transfer of case challenging agency action to Oklahoma was in the interest of justice because related cases were pending there); *Stratmark, Ltd. v. Cross Mediaworks, Inc.*, No. 3:10-CV-0780-L, 2010 WL 5106442, at *5 (N.D. Tex. Dec. 14,

---

[1] Relying on precedent from another district, Plaintiff contends that the location of the administrative record is not relevant in the § 1404(a) analysis because "it can be made available anywhere by CD-ROM."  Pl.'s Opp'n at 8.  But the Fifth Circuit has rejected this argument. Notwithstanding the fact that "access to some sources of proof presents a lesser inconvenience now than it might have absent recent [technological] developments," the court granted a writ of mandamus to require transfer of a case in part because the relevant documents resided in the transferee district.  *Volkswagen II*, 545 F.3d at 316.  In doing so, the Fifth Circuit explicitly cautioned district courts not to "read[] the sources of proof requirement out of the § 1404(a) analysis."  *Id.*; *see also Busch v. Robertson*, No. 3:05-CV-2043-L, 2006 WL 1222031, at *4 (N.D. Tex. May 5, 2006) (concluding that, although relevant records could be "copied and shipped to Texas," the fact that the records resided in Virginia weighed "definitively . . . in favor of [a] transfer" to Virginia).  Therefore, the fact that the administrative record resides with Defendants in or near the District of Columbia also weighs in favor of a transfer.

2010) ("Frankly, it is nonsensical for this action to remain in this district in light of the two pending related cases in Oklahoma, and this alone is sufficient to transfer this action." (emphasis omitted)).

Plaintiff's reliance on a decision by the Judicial Panel on Multidistrict Litigation is inapposite because that case considered whether "*pretrial* proceedings" in several cases should be centralized under 28 U.S.C. § 1407.  *See* Pl.'s Opp'n at 7 (citing *In re Clean Water Rule: Definition of "Waters of the United States*," 140 F. Supp. 3d 1340 (J.P.M.L. 2015)).  Section 1407 permits consolidation of similar cases for pretrial proceedings, but requires the Panel to remand the case back to the transferor court "at or before the conclusion of such pretrial proceedings."  28 U.S.C. § 1407(a).  Because the cases at issue in *In re Clean Water Rule* would "involve only very limited pretrial proceedings" and "minimal," if any, discovery, the Panel determined that pretrial coordination under § 1407 was not warranted.  140 F. Supp. 3d at 1341.  This case, however, does not involve § 1407.  Instead, Defendants have moved to transfer the entire case to the District of Columbia under § 1404(a).  Under § 1404(a), and in contrast to § 1407, the absence of discovery in a case merely means that the factor assessing the convenience of witnesses is neutral.  *See, e.g.*, *Defenders of Wildlife*, 74 F. Supp. 3d at 85.  It does not somehow render all of the other convenience and interest of justice factors under § 1404(a) irrelevant.  Indeed, courts routinely grant motions to transfer venue under § 1404(a) to permit related cases to be resolved in a single forum even where the cases will be decided on the basis of an administrative record.  *See* Mem. in Supp. of Defs.' Mot. to Transfer ("Defs.' Mem.") at 9-10, 13, ECF No. 22.

## III.    A Transfer Will Avoid the Risk of Inconsistent Judgments

Simultaneously litigating three identical cases in three separate districts also could yield conflicting decisions.  The plaintiffs in all three cases seek the same broad injunctive and declaratory relief.  *See* Compl., Prayer for Relief ¶¶ 1-3, ECF No. 1 (seeking an "injunction setting

aside the Deeming Rule[] and forbidding FDA from enforcing it" and asking the Court to declare that the "Deeming Rule violates the Appointments Clause" and "the First Amendment"); *accord Moose Jooce* Compl., ECF No. 22-1; *Hoban* Compl., ECF No. 22-2.  Given the broad relief sought in all three cases, there is a risk of inconsistent judgments, which is another factor that weighs in favor of transferring the cases to a single forum.  *See, e.g.*, *Front Row Techs.*, 2012 WL 12044383, at *5; *Celanese Corp.*, 410 F. Supp. at 575.

Despite this authority, Plaintiff contends that the possibility of inconsistent rulings is actually a factor that weights against transfer.  According to Plaintiff, it is in the interest of justice to allow claims to "percolat[e]" in multiple districts so that courts have a chance to reach conflicting results and then the Supreme Court may be more likely to grant certiorari to resolve any "split of authority."  *See* Pl.'s Opp'n at 6-7.  None of the cases cited by Plaintiff, however, suggest that the potential benefits of "percolation" have any relevance to the transfer analysis under § 1404(a).  Indeed, the Supreme Court said just the opposite in *Continental Grain Company v. The Barge FBL-585*, 364 U.S. 19 (1960).  There, the Supreme Court affirmed a district court's decision to transfer a case to another district where a case raising the same issues was already pending.  Far from extoling the "benefits" of having multiple courts decide the same issues (Pl.'s Opp'n at 7), the Court explained that "permit[ting] a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that s 1404(a) was designed to prevent."  *Cont'l Grain*, 364 U.S. at 26; *see also Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) (reiterating that the Supreme Court has "made quite clear" that it is a waste of time, money, and resources to allow two cases with the same issues to pend simultaneously in different districts).

Plaintiff cites no case in which a court has determined that the purported "benefit[]" of percolation is a factor to be considered in the § 1404(a) analysis or that it would weigh against a transfer. Pl.'s Opp'n at 7. In fact, the case law is to the contrary. "[T]he existence of related litigation in a transferee court is a factor that weighs *strongly in favor* of transfer." *DataTreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (emphasis added). Moreover, the virtues of avoiding duplicative litigation are such that the existence of a related case in another court "may dictate transfer" in the interest of justice "even if the convenience of the parties and witnesses calls for a different result." *Id.*; *see, e.g.*, *Skyline Displays, Inc. v. Sweeney*, 634 F. Supp. 746, 748 (D. Minn. 1986) ("Where a related case is pending in another district, . . . 'the interests of justice are better served when transfer is aimed at resolving in one litigation all legal contentions.'"); Defs.' Mem. at 9-10 (citing cases).

## IV.    A Transfer Is the Most Convenient Course for the Parties

In addition to promoting judicial economy and averting the possibility of inconsistent judgments, a transfer is also the most efficient, economical, and convenient course for the parties. Instead of simultaneously litigating three duplicative cases in three separate districts across the country, a transfer would enable the parties to "save[] time and money by having to participate in proceedings in only one district." *Medtronic*, 337 F. Supp. at 497; *see Front Row Techs.*, 2012 WL 12044383, at *4 ("[D]uplicative litigation" in multiple districts would "make the resolution of the parties' dispute more difficult, less efficient, [and] more expensive.").

Although the convenience of counsel is not a factor to be considered under § 1404(a), the expense imposed on the parties is a relevant consideration. *See, e.g.*, *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004) (explaining that the "practical problems that make trial of a case easy, expeditious and inexpensive" must be considered under § 1404(a)); *Front*

*Row Techs.*, 2012 WL 12044383, at *4 (relying in part on the party resources that could be saved by consolidating related cases in one forum).  Thus, the ability of both Plaintiff and Defendants to conserve resources by having counsel litigate all three cases in the District of Columbia weighs "significant[ly]" in favor of a transfer.  *Front Row Techs.*, 2012 WL 12044383, at *4.  A transfer will permit the parties (who are represented by the same attorneys in all three cases) to file one set of dispositive motions, instead of three, and to participate in any hearings in a single court, instead of travelling to multiple courts throughout the country.

Plaintiff asserts that litigating these cases (whether in three separate districts or one) will not impose any costs on the parties because "Pacific Legal Foundation represents its clients free-of-charge" and FDA "is entitled to the same representation from the Department of Justice."[2]  Pl.'s Opp'n at 8.  This argument ignores two important considerations.  First, DOJ's representation is not free.  The government and, in turn, the taxpayer bears the financial burden.  Second, although the Pacific Legal Foundation may not be charging its client, Plaintiff's complaint seeks "an award of reasonable attorney fees and costs" should Plaintiff prevail.  Compl., Prayer for Relief ¶ 5.  Plaintiff cannot claim that its counsel's costs are "free," and thus irrelevant, at the same time that it espouses an intent to seek to impose those costs on Defendants should it prevail.

Plaintiff also misses the point when it suggests that the Northern District of Texas is a more convenient forum for Plaintiff (and its counsel) because Plaintiff's counsel are located "in California, not on the East Coast."  Pl.'s Opp'n at 8 n.2.  The relevant question is not whether it is cheaper or less time consuming to fly between California and Texas or between California and Washington, D.C.  The pertinent inquiry is whether it would be cheaper or less time consuming for Plaintiff's counsel to fly from California to Washington, D.C. *once* for any proceedings in

---

[2] Plaintiff does not indicate whether its local counsel are providing their services free of charge.

8

consolidated cases, or alternatively, to fly from California to Washington, D.C. for any proceedings in *Moose Jooce*, and then to fly from California to Minnesota for any proceedings in *Hoban*, and then to fly from California to Texas for any proceedings in this case. To ask this question is to answer it. And, as with Plaintiff, a transfer also would conserve Defendants' resources because Defendants (and their counsel) could litigate the issues raised by these cases once, in a single forum, instead of three times, in three separate districts.[3]

Plaintiff does not explain why litigating this case in the District of Columbia with the other identical actions would be inconvenient for it, other than to say that it is not Plaintiff's chosen forum. But, as explained above, Plaintiff's choice of forum is not an independent factor in the transfer analysis. Plaintiff also asserts that it has an interest in bringing suit in its home state. Pl.'s Opp'n at 3. This case, however, does not present the sort of "local" dispute that was at issue in the only case on which Plaintiff relies. *See id.* (citing *Wyoming v. U.S. Dep't of Interior*, No. 07-CV-319-B, 2008 WL 11335154 (D. Wyo. May 14, 2008)). That case challenged a rule regarding snowmobile use in Yellowstone and Teton National Parks—both of which are located in Wyoming. *See Wyoming*, 2008 WL 11335154, at *1. The deeming rule, in contrast, applies to vaping retailers and manufacturers nationwide, such that no one judicial district has a primary interest in the dispute. *See, e.g.*, *Moose Jooce* Compl., ECF No. 22-1 (asserting claims on behalf of plaintiffs in California, Michigan, and North Dakota).

Finally, as Defendants explained in their opening brief, the fact that this case may be resolved more quickly in the District of Columbia is another factor weighing in favor of a transfer.

---

[3] Plaintiff also notes that the Department of Justice has litigators in the U.S. Attorney's Office in Dallas. *See* Pl.'s Opp'n at 8 n.2. But it undoubtedly would be inefficient—and costly—for three different U.S. Attorney's Offices (in Washington, D.C., Texas, and Minnesota) to handle three cases that raise identical claims. Like Plaintiff's counsel, it is more efficient if the same attorneys for Defendants handle all three cases.

*See* Defs.' Mem. at 11-12 (comparing caseload statistics for the District of Columbia and the Northern District of Texas and also noting that one of Plaintiff's claims is already being litigated in the D.C. Circuit).  Plaintiff does not dispute these facts or that the speed of resolution is yet another factor justifying a transfer here.

## CONCLUSION

For these reasons and those set forth in Defendants' opening brief, the Court should grant Defendants' motion to transfer this case to the U.S. District Court for the District of Columbia, where it can be consolidated with the identical action pending there.


Dated:  June 1, 2018

Of counsel:

ROBERT P. CHARROW
General Counsel
U.S. Dep't of Health and Human Services

REBECCA K. WOOD
Chief Counsel
Food and Drug Administration
Associate General Counsel
Food and Drug Division

PERHAM GORJI
Deputy Chief Counsel for Litigation

WENDY S. VICENTE
Senior Counsel

ANNA K. THOMPSON
Associate Chief Counsel
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
White Oak 31, Room 4562
Silver Spring, MD 20993-0002

Respectfully submitted,

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOEL McELVAIN
Assistant Director

 /s/ *Michelle R. Bennett*
MICHELLE R. BENNETT
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20530
Tel:  (202) 305-8902
Fax:  (202) 616-8470
E-mail:  michelle.bennett@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2018, I filed the foregoing document with the Clerk of Court via the CM/ECF system, causing it to be electronically served on Plaintiff's counsel of record.

 /s/ *Michelle R. Bennett*
MICHELLE R. BENNETT